# Bohlen's Estate.     Appeal of the Pennsylvania Company for Insurance on Lives, &c.

1. A testator gave two-tenths of his estate to two trustees (by name) or the survivor;—the trustees were also his executors,—in trust to pay the income to a daughter for life for her separate use, or permit her to take the income herself for her separate use, and at her decease to assign the estate according to her will, or for want of a will to her children, he authorized his "*executors or the survivor of them*" to sell his real estate and invest the proceeds together with moneys from his personal estate in real estate, public funds or put at interest on real security or in bank or other stocks, &c., and if one of his executors should be absent from the United States, the conveyance made by the other executor to pass a good title. The testator owned stock in the defendants' company, part of which was marked as belonging to the daughters' trust. The trustees having died, two others were appointed, and subsequently Vezin, Lorenz and Gerhard were appointed in their stead. Lorenz changed his residence to Europe, and made general power of attorney to Vezin and another to collect, &c., "any and all" income from the trust, "and to call in, sell or change any or all stocks or loans," &c., and transfer them, &c. McMurtrie was appointed in place of Gerhard, who had died. Vezin, as trustee and as attorney for Lorenz, afterwards transferred stock in defendants' company. *Held*, that the power was such a delegation of a discretion as could not be made and the transfer was invalid.

2. There can be no delegation of a discretion. Per Paxson, J.

3. A trustee may delegate a mere ministerial duty. *Id.*

4. A ratification of the principal after the sale and transfer had been made by the attorney would have validated it. *Id.*

February 13th 1874.   Before Agnew, C. J., Williams, Mercur and Gordon, JJ.   Sharswood, J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Philadelphia:* In Equity: Of July Term 1872, No. 48.

This was a bill filed November 3d 1871 by Richard C. McMurtrie against the Pennsylvania Company for Insurance on Lives and Granting Annuities, Charles Vezin and Ferdinand Lorenz.

[Bohlen's Estate.]

The object of the bill was to declare that the defendants, the Pennsylvania Company, &c., participated with Charles Vezin in a breach of trust in allowing Vezin to transfer certain shares of their stock, held by him and others in trust for Johanna C. M. Halbach and Henrietta W. Halbach under the will of Bohl Bohlen, deceased, and that the company were liable to restore and make good the trusts, &c.

Bohl Bohlen, by his will dated September 1st 1830 and proved April 26th 1837, having appointed his brother John Bohlen and his son-in-law Edward Hagedorn, executors, &c., provided amongst other things as follows :—

" Item. I give, devise and bequeath two full, equal and undivided tenth parts of all the rest, residue, reversion and remainder of my estate, real, personal and mixed, whatsoever and wheresoever, unto my said brother John Bohlen and son-in-law Edward Hagedorn and the survivor of them, and the heirs, executors, administrators and assigns of the survivor of them, for ever, in trust, to pay the rents, interest and income thereof to my daughter Johanna Carolina Matilda Halbach (wife of Arnold Halbach), for and during all the term of her natural life, for her sole and separate use, without the control or interference of her husband, or liability for his debts or engagements: or at the option of my said daughter, to permit and suffer her to take and receive the said rents, interest and income herself, for her sole and separate use, and her receipt alone, notwithstanding her coverture, to be a good and valid discharge for any payment made to her ; and upon the decease of my said daughter, then to pay, transfer, assign and convey the said two undivided tenth parts unto such of her children and grandchildren, and for such estate and estates, use or uses, as she my said daughter by her last will and testament, or any instrument in the nature of a will executed in the presence of two or more credible witnesses, shall direct, limit and appoint, and for want of such will, direction, limitation and appointment, then to pay, transfer, assign and convey the same to all her children, born and to be born, their respective heirs, executors and assigns for ever, in equal parts and shares, as tenants in common.

Item. "I give, devise and bequeath two other full, equal and undivided tenth parts of my said residuary estate unto my said brother John Bohlen, and my son-in-law Edward Hagedorn, and the survivor of them, and the heirs, executors, administrators and assigns, or the survivor of them, for ever, in trust, to pay the rents, interest and income thereof to my daughter Henrietta Wilhelmina Halbach, wife of George Halbach, for and during the term of her natural life, for her sole and separate use, without the control or interference of her said husband, or liability for his debts or engagements; or at the option of my said daughter Henrietta Wilhelmina, to permit and suffer her to take and receive the said

rents, interest and income herself, for her sole and separate use, and her receipt alone, notwithstanding her coverture, to be a good and valid discharge for any payment made to her; and upon the decease of my said daughter Henrietta Wilhelmina, then to pay, transfer, assign and convey the said two undivided tenth parts unto such of her children and grandchildren, and for such estate and estates, use or uses, as she my said daughter by her last will and testament, or any instrument in the nature of a will executed in the presence of two or more credible witnesses, shall direct, limit and appoint, and for want of such will, direction, limitation and appointment, then to pay, transfer, assign and convey the same to all her children born and to be born, their respective heirs, executors and administrators for ever, in equal parts and shares, as tenants in common."

After disposing of the remaining six-tenths of his estate in trust, he further provided:—

"And it is my mind and will, and I do hereby direct, authorize and empower my said executors and the survivor of them, for the better settlement and distribution of my estate, to sell and dispose of all or any part of my real estate, and to convey the same to the purchaser or purchasers thereof, his, her or their heirs and assigns for ever; and the moneys arising from such sale, together with any moneys that may come to their hands from my personal estate, to be by them invested in the purchase of real estate, in the public funds or placed out at interest on good real security, or in bank or other stocks, or part and parts in either, as they shall see proper, for the purpose of this my will, and in such way and manner as they or the survivor shall deem most advisable; and in order that no difficulty may arise in the sale of my real estate, if one of my executors should be absent from the United States, I do hereby declare that the conveyance made by the other executor shall be as good and available in law as though both executors had made such conveyance."

At the time of his death the testator owned twenty-eight shares in the capital stock of the Pennsylvania Company; these shares were not converted by the executors, but were divided between the two trusts, to wit: to the trust of Johanna M. C. Halbach, fourteen shares; to the trust of Henrietta W. Halbach, fourteen shares. John Bohlen survived Edward Hagedorn, and having died in the year 1850, the Orphans' Court appointed John C. Lang and Charles Vezin trustees for the above-mentioned trusts. In the year 1854, the court appointed Charles Vezin, the younger, Ferdinand Lorenz and Benjamin Gerhard trustees in the place of Charles Vezin, deceased, and John C. Lang; and the shares of stock were transferred to the last-named trustees as such, the trust being declared in the certificate and on the books of the company to

hold fourteen shares for Johanna M. C. Halbach and fourteen shares for Henrietta Halbach.

On the 16th of November 1863, Ferdinand Lorenz made a power of attorney as follows :—

"Know all men by these presents, that I, Ferdinand Lorenz, of the city of Philadelphia, merchant, now residing in the Free Hanseatic city of Bremen, have made, constituted and appointed, and by these presents do make, constitute and appoint, Charles Lorenz and Charles Vezin, of the said city of Philadelphia, merchants, and each of them jointly and severally, my true and lawful attorney and attorneys, and in my name, as a co-trustee of the trust estates of Henrietta Wilhelmina Halbach and Johanna Carolina Matilda Halbach, to collect and receive any and all dividend or dividends, interest or interests, now due or which may hereafter become due, on any or all public or private stock or stocks, loan or loans or other personal investment or investments which now or may hereafter belong to the said trust estates or either of them, and to call in, sell or change any or all of the said stocks or loans, and to transfer or assign the same or any of them, or any part thereof, and receive and reinvest the proceeds thereof ; also, to ask, demand, sue for at law or in equity, recover and receive from any person or persons, body or bodies corporate or politic, any sum or sums of money, debts, goods, wares, dues, effects and demands whatsoever, which are now due, coming or belonging to the said trust estates or either of them, or which may hereafter become so due, coming or belonging, and for these purposes to commence suit or legal proceedings at law or in equity against any person or persons, or body or bodies corporate or politic, in any court or courts, and in the mere discretion of my said attorneys or either of them to compound or compromise with any person or persons or body or bodies corporate or politic, for any parts or portions of the said debt or demands, taking a part in full satisfaction of the whole, and on the receipt of any such sum or sums of money, debts, goods, wares, dues, effects and demands, or anything in compromise of the same, to make, seal and deliver acquittances or other sufficient discharges for the same ; also, to state, adjust and settle any account or accounts with any person or persons or body or bodies corporate or politic, with whom the said trust estates or either of them now have or may hereafter have any unsettled account or accounts ; also, as such co-trustee of the said trust estates and of either of them, to acknowledge satisfaction of record of any mortgage or mortgages which now or may hereafter belong to the said trust estates or either of them ; also, to sell at public or private sale for cash or on credit, let on ground-rent or otherwise dispose of any real estate wheresoever situated now belonging or which shall hereafter belong to the said trust estates or either of them, and in the case of any such sale or other disposition of any such

[Bohlen's Estate.]

real estate, to sign, seal, execute, acknowledge and deliver all deeds, conveyances, assignments, transfers or other instruments, sealed or otherwise, which to my said attorneys, or either of them, may seem proper; also, for me and in my name to do all acts whatever, which I myself could do if personally present as a co-trustee of the said trust estates or either of them, and generally to do all and every act and acts, thing and things, device and devices in the law whatsoever needful or necessary for or affecting the premises, with power also an attorney or attorneys under them for these purposes to make and substitute, hereby ratifying and confirming all that my said attorney or attorneys, and each of them, or their substitute or substitutes, shall do therein, by virtue of these presents."

In December 1864 and January 1865, by two separate decrees, Richard C. McMurtrie, the plaintiff, was appointed by the Orphans' Court trustee in the place of Benjamin Gerhard, who had died. On the 21st of September 1870 the company permitted Charles Vezin, Jr., as trustee and as attorney in fact of Ferdinand Lorenz, to transfer the shares of their stock held in trust as above stated, to a third person, who still held the certificates; Vezin converted the proceeds to his own use and absconded.

The bill set out these facts and averred amongst other things:—

"2. There was by this will no power given to the trustees to deal with the corpus of the estate when invested by the executors, nor was there any power conferred other than such as is incident to a trust, to receive and pay or permit to be received by a tenant for life, and to transfer to remainder-men on the termination of the life estates."

They also averred that by the acts complained of the company became liable to make good the trusts and the loss thereby occasioned.

"10. That the said transfer was void and a breach of trust in the corporation defendants, because on the face of the certificates the said company had notice of the trust, and that the said shares were held by three trustees in trust for J. C. M. Halbach or H. C. Halbach respectively, and neither of these united in or assented to the said transfer.

"Because on the face of each of the certificates, while a trust was apparent for a person named therein, there was no actual or apparent authority in the trustees to transfer the said shares.

"Because on the face of the certificates there was nothing from which the company could draw the inference that the survivors of the said trustees could transfer the stock."

"12. And your orator further charges, that if there was a power in the said survivors of the trustees to sell and dispose of the estate without the consent of the *cestui que trust*, known to be such, and without the sanction of a court, that this power can only be exercised by all the surviving trustees, and this was a transfer not so

made, inasmuch as Ferdinand Lorenz did not join in the sale or transfer, nor assent thereto, nor did the defendants ever inquire whether he had been consulted."

In their answer, the Pennsylvania Company amongst other things averred :—

" 3. We are advised, and therefore aver, that if, as the said complainant alleges, he was appointed co-trustee with said Vezin and Lorenz, it became, and was, his legal duty immediately to notify us of the fact of his appointment, especially as no particular number of trustees was required by the will in which only two were originally named, and because, as he well knew, there was nothing to induce us to inquire whether an additional appointment had been made, or to suspect that the title, as it stood upon our books, had ever been changed. This notification, though six years elapsed, was never given us, directly or indirectly, and, until within a few weeks past, we never knew of his appointment. If the complainant had done what we think was his duty in this particular, no loss would have been suffered by his *cestuis que trust*, as we never would have permitted the transfer without his assent. We are advised, and therefore aver, that he is responsible, in the first instance, for all loss which thus occurred. We therefore claim that he has no remedy against us, as prayed for in the bill.

" 4. On the 16th day of November 1863, Ferdinand Lorenz, who had then left the United States, and had become a resident of Bremen, where he has ever since continued to live, with the full knowledge and approval, as we are informed and believe, of his said *cestuis que trust*, executed a power of attorney, by which he enabled his co-trustee to transfer the stocks so held by them in trust as aforesaid. The existence of this power was well known to the complainant, who induced the Farmers' and Mechanics' National Bank of this city, about six weeks before the transfer of our stock, to make transfers of Pennsylvania State Loans to the amount of upwards of thirteen thousand dollars, held upon similar trusts, upon this very power. We are informed and believe, that the above-mentioned transfer was not ' done under the sanction of a court of competent jurisdiction.'

" 5. We are advised, and therefore aver, that in the said will of Bohl Bohlen there were powers conferred upon his executors to deal with the ' *corpus* ' of his estate, which were intended to be, and in effect were, given to them in their additional capacity of trustees, and that these, by appointment of court, vested in said Vezin and Lorenz. We deny that the powers of the latter were limited to the extent claimed in the second paragraph.

" 6. * * * We are further advised, that until we received a due notice of the said appointment, we were not, under the circumstances, even though it was valid, chargeable with constructive

notice of it; but that we were entitled to rely, as we did, upon the evidence of title as the same appeared on our books.

"8. We deny that the said transfers are void, and we do claim that we are entitled to look to the instrument by which the trusts of said shares were created. We are advised, and therefore aver, that by the said will, power was given to the said trustees, without any sanction of the court, to sell and transfer all stocks, and especially such as were not what is known as 'legal investments.' We are advised, and therefore aver, that it is the duty of a trustee, intrusted with an estate during the lifetime of a *cestui que trust*, holding securities of this class, to convert the same into those which are legal, whenever he thinks it advisable, and that a wilful failure to perform it would render him liable in damages. We claim that no corporation whose stock it is thus thought proper to sell, can, by a refusal to permit a transfer, deprive him of such necessary control of trust assets, and we submit that it would be ruinous to *cestuis que trust* in periods of financial crash occurring during those months in which no courts are held, practically to prevent all changes.

"11. We are advised, and therefore aver, that the legal effect of the power of attorney was not a delegation of discretion, but simply of power to perform necessary ministerial acts during the protracted absence abroad of the said Lorenz. We deny that it professed to delegate discretion. In the absence of circumstances of suspicion which did not exist, we were bound to presume, without any right to demand proof by the production of private letters and instructions, that the ministerial acts thus authorized, were dictated and supervised by said Lorenz. * * *

"12. * * * We are advised, and therefore aver, that the absence from the country of the said Lorenz, with intent to reside abroad permanently, prevented a proper and judicious exercise by him of the powers vested in him by the appointment of the Orphans' Court; that by reason of such absence, the discretion of the trustees, vested in the co-trustee, who alone, by his residence here, possessed the opportunities requisite to intelligent action, and could faithfully and properly superintend the interests confided to them ; that as the *cestuis que trust*, upon application to the court, could have had Lorenz ousted from his position, whereupon the entire estate and powers would have vested in said Vezin, the giving of the said letter of attorney, with the knowledge and assent of the said *cestuis que trust*, only accomplished what the action of the court would have effected had it been invoked ; and that it was the duty of the said Lorenz either to resign or to take such measures as would render his absence least fatal to his *cestuis que trust*, by giving his co-trustee the power of instant action upon sudden and unexpected emergencies. * * *

"14. We deny that the complainant is entitled to any part of

[Bohlen's Estate.]

the relief he prays for, and we claim that he is himself liable, by reason of his neglect to notify us of his appointment, to make good to his *cestuis que trust* the loss thereby occasioned."

The case was heard on bill and answer.

The opinion of the Court of Common Pleas was delivered, May 14th 1872, by

PAXSON, J.—" This case came up upon bill and answer. It involves two important questions, viz.: 1. Had the trustees under the will of Bohl Bohlen, deceased, any power under said will to transfer the stock? and 2. Was there a valid transfer of the stock referred to, under the power of attorney?

" The operative words of said will, creating the trust, its powers and duties, are : ' I give, devise and bequeath * * * the rest, residue, reversion and remainder of my estate, real, personal and mixed, whatsoever and wheresoever, * * * in trust, to pay the rents, interest and income thereof to my daughter, J. C. M. Halbach, wife of A. Halbach, during all the term of her natural life, for her sole and separate use, without the control or interference of her husband, or liability for his debts or engagements, or at the option of my said daughter, to permit and suffer her to take and receive the said rents, interest and income herself, for her sole and separate use, and her receipt alone, notwithstanding her coverture, to be a good and valid discharge for any payment made to her;' and upon the decease of his said daughter, over in remainder.

" By a prior clause in his will, the testator had directed his executors to sell his real estate, and the proceeds thereof, and other funds derived from his estate, to invest in real security, the public lands, bank or other stocks, and in real estate.

" The will of the testator was admitted to probate in 1837. In the first clause thereof he named John Bohlen and Edward Hagedorn his executors. Afterwards, in the clauses creating the trusts for his two married daughters, he devises two-tenths of the residuary estate to them in trust for each daughter. They were, therefore, both executors and trustees.

" Among other things held by the testator, and which it is charged his executors elected to retain unconverted as an investment, and hold as trustees, were certain shares of the capital stock of the Pennsylvania Company for Insurances on Lives and Granting Annuities, &c., the defendants, which said shares were divided between the trusts, as follows: To the trust of Johanna C. M. Halbach, fourteen shares, and to the trust for Henrietta W. Halbach, fourteen shares.

" In the year 1850, at the death of John Bohlen, the surviving trustee, the Orphans' Court appointed John C. Lang and Charles Vezin trustees, under the said will, for the trusts above stated.

" In the year 1854, the said court appointed Charles Vezin the

[Bohlen's Estate.]

younger, Ferdinand Lorenz and Benjamin Gerhard trustees, in the place of the said Charles Vezin, deceased, and John C. Lang. And the said shares were transferred to them as trustees; the trust being declared in the certificate and on the books of the company to be, as respects fourteen of said shares in trust for J. C. M. Halbach, and as respects fourteen in trust for H. C. Halbach.

"In December 1864 and January 1865, by two several decrees of said court, the plaintiff was appointed trustee of said trusts in place of Benjamin Gerhard, who was then deceased.

"It does not appear that any notice of this last appointment was given to the defendants prior to the transfer of the stock complained of in the bill. Ferdinand Lorenz, one of said trustees, has been for several years past residing in Europe. On the 21st of September 1870, the corporation defendants permitted the said Charles Vezin, as trustee, and as attorney in fact for the said Lorenz, to transfer the said shares to another person, who now holds the certificates therefor. Vezin converted the proceeds to his own use and absconded.

"The bill seeks to charge the defendants with the value of the stock, which they allowed to be transferred as above stated. The plaintiff alleges:—

"1. That the defendants are liable for permitting the transfer, because they had express notice of the trust, and the trustees had themselves no power to transfer. And

"2. That the power of attorney from Lorenz to Charles Lorenz and Charles Vezin, Jr., was void on its face, because a delegation of discretion; and that the defendants are therefore liable for allowing a transfer to be made without other evidence of the consent of Lorenz, whose name appeared as trustee.

"In regard to the first point, it would seem that the defendants had express notice of the trust, for the reason that the fact of the trust appeared on the certificates and in the transfer books, and is admitted by paragraph 1 of the answer. This was at least sufficient to put the defendants upon inquiry, and they are bound by whatever that inquiry would have disclosed. It was held in Bayard *v.* The Bank, 2 P. F. Smith 235, that 'corporations are trustees to a certain extent for stockholders—that is, for the protection of individual interests. * * * They are alike trustees of the property and of the title of each owner. They have in their keeping the primary evidence of title, and they are justly held to proper diligence and care in its preservation. From this it results that they may rightfully demand evidence of authority, to make a transfer before they permit it to be made. Their own safety requires that they be satisfied of the right of the person proposing to make a transfer, to do what he proposes. Generally sufficient evidence of such right is found in the possession of the legal title to

[Bohlen's Estate.]

the stock. Yet it is well settled that it is not in all cases sufficient, notwithstanding that the true equitable ownership may be in some other than the holder of the legal right, and a transfer may be a gross wrong to such an equitable owner. To that wrong the corporation or keepers of the register make themselves parties, if with knowledge that there is no equitable right to transfer they permit it to be done.'

" It may therefore safely be assumed that where stock stands upon the books of a corporation in the name of a trustee, the said corporation is bound to inquire as to the authority of the trustee to transfer said stock before they permit such transfer to be made. This rule does not apply, however, to the case of executors and administrators transferring stock standing in the name of a decedent, for the reason that the law casts upon them the legal ownership of the personal property of such decedent. It is their duty to pay debts and make distribution amongst heirs or legatees. To do so, they must convert the personalty into cash, and a transfer of stock, therefore, would be in due course of administration. It would be unreasonable to hold that a corporation in such case should be held to inquire whether in point of fact the particular stock was needed for the payment of debts or legacies. The rule that a certificate of letters testamentary, or of administration, is generally sufficient to justify the transfer of stock, is recognised in Bayard v. The Bank, supra, and several cases cited by Mr. Justice Strong in his opinion; yet there are authorities which hold that in the case of an executor, the party permitting the transfer is bound to see that the former has authority under the will to make such transfer: Lowry v. The Bank, Amer. Law Journal, N. S., Vol. III., p. 111, and cited in Bayard v. The Bank, supra.

" A trustee stands upon a different footing from an executor or administrator, in regard to the transfer of stock. Administration is no part of his duties. His office is to hold and safely keep the trust funds in accordance with the terms of the will or other instrument creating the trust. Sometimes it is to pay income to the parties entitled thereto, or to accumulate the same during a stated period. If he transfers securities, it must be in pursuance of an express authority contained in the trust itself, or by virtue of an authority implied from the nature of said trust, or the character of the securities in his hands. In this case the plaintiff contends that there was neither an express nor an implied power of sale.

" The will of Bohl Bohlen, deceased, after creating the aforesaid and other trusts, contains the following clause, viz.: 'And provided also, And it is my mind and will and I do hereby direct, authorize and empower my said executors and the survivor of them, for the better settlement and distribution of my estate, to sell and dispose of all or any part of my real estate, and to convey the

[Bohlen's Estate.]

same to the purchaser or purchasers thereof, his, her or their heirs and assigns for ever; and the moneys arising from such sale, together with any moneys that may come to their hands from my personal estate, to be by them invested in the purchase of real estate, in the public funds or placed out at interest on good real security, or in bank or other stocks, or part or parts in either, as they shall see proper, for the purposes of this my will, and in such way or manner as they or the survivor shall deem most advisable; and in order that no difficulty may arise in the sale of my real estate, if one of my executors should be absent from the United States, I do hereby declare that the conveyance made by the other executor shall be as good and available in law as though both executors had made such conveyance.'

" Here there is express power given to his executors to sell his real estate; and in order that there might be no difficulty in making such sales, he authorizes one executor to make conveyances thereof, in case of the absence of the other executor in Europe. There is no power given to them in terms to transfer stocks. That the executors had such power by virtue of their office may be conceded. But they did not sell the stock referred to. They elected to retain it unconverted, and it passed into and formed a part of the trust estate. As before observed the original executors were also trustees; they acted in a double capacity. The mere fact that the two offices are united in the same persons, does not change their duties or responsibilities. John Bohlen and Edward Hagedorn, as trustees under the will of Bohl Bohlen, are to be held to precisely the same rules as if they had not also been named in said will as executors.

" Clearly, their successors in this trust, who are trustees alone, and who have never been in any way concerned in the administration of the estate, can possess and exercise only such powers as they derive from the will, or are incident to the office of trustee in the management of the trust estate.

" The executors, not having converted this stock, and it having passed into the hands of the trustees as a part of the trust estate, there is no express authority in the will for them to transfer it. This brings us to the question whether there is any implied power in a trustee to sell securities in his hands belonging to the trust estate ?

" In considering this point we must not lose sight of the fact that this question does not arise between the trustees making the transfer and their *cestui que trust*, but between the latter and the corporation which allowed the transfer to be made. While the latter may not be regarded strictly as an innocent party, still it must be apparent that the question whether said corporation is to be mulcted to the amount of the stock rests upon a very different principle

[Bohlen's Estate.]

from the question whether as between the trustees and the *cestui que trust* the transfer was proper.

"We must also dismiss those cases in which there was a specific devise or bequest.   Among them may be mentioned Lowry *v*. The Commercial and Farmers' Bank, before cited, and which was decided by Chief Justice Taney, in 1848.   There, stock stood in the name of an executor.   The bank, defendant, allowed him to transfer it and receive the proceeds.   The stock was specifically bequeathed to the executor *in trust*, to pay over the dividends, &c., and the transfer was made eight years after the testator's death.

"The court held that no implied power to sell existed, and the bank was ,held liable, because, after eight years, the payment of debts was to be presumed.   In the face of a specific bequest of the stock, no implied power, except for the payment of debts, could exist, and this was negatived by the lapse of time since the testator's death.

"Hertell *v*. Bogart, 9 Paige 57, merely decides that, inasmuch as the executors were trustees of the mortgage, an assignment thereof by one of them was insufficient; had they both executed the assignment it would have passed the title to the mortgage.

"This is a concession of their power to make sale of the mortgage.

"In Bayard *v*. The Bank, cited by plaintiff, the only point decided by the court was that, 'a transfer agent, before permitting a transfer of stock, appearing on the face of the certificate to be held in trust, has a right, especially if the *cestui que trust* is named, to require the exhibition of the authority to transfer beyond the certificate.'   It is in no sense an authority that there is no such thing as an implied power of sale in a trustee to sell stocks or other securities belonging to a trust estate.

"Had the corporation defendants examined the will of Bohl Bohlen, prior to allowing this transfer, what would they have found? Certainly no specific bequest of this stock by which the trustees were directed to hold it, and pay over the dividends, &c.   But on the contrary, they would have ascertained the fact that this particular stock passed to these trustees as a part of the testator's residuary estate, to be held under certain trusts and without any restriction upon transfers.

"There is the additional fact that this stock was not a legal investment.   The question as to how far a trustee is bound to convert illegal into legal investments is a very nice one, which it is not necessary for us now to decide.   It is said in Hill on Trustees, *p. 379 : 'Where the trust property is already invested on personal or other securities, which would not be sanctioned by the court, it frequently becomes a question of no little difficulty to determine how far it is the duty of trustees to call in such securities and lay out the proceeds in some proper investments.'   And, again,

[Bohlen's Estate.]

in the same book, *p. 380: ' If, however, the author of the trust, in general terms, vests his whole estate in trustees, either by deed or will, without any specific mention of the securities of which it then consists, and there be nothing from which it may be inferred that the trusts were intended to apply to the property in its actual state, it would be a very hazardous course for the trustees to suffer any part of the estate unnecessarily to remain outstanding on improper security. It certainly would be no valid reason for so doing, that the creator of the trust himself considered the existing securities to be a sufficient investment.' The same authority, *p. 281, says: ' In some cases the trustees will be charged with interest as well as the capital which has been lost by not calling in the improper securities.'

" If a failure to change an illegal into a legal investment may make a trustee responsible for such omission, it necessarily follows that he must have an implied power of transfer, though no express power be contained in the instrument creating the trust. We prefer to limit this decision to the facts of this case, and we do not express any opinion as to the right of a trustee to transfer stocks recognised as legal investments, without express authority.

" Whether this transfer was judicious, is no part of this case. It is a question of power to make the transfer. If it exists, the defendants are not to be held responsible for its disastrous exercise.

" The remaining question for our determination is as to the validity of the sale under the power of attorney. It is elementary law that co-trustees must join in a transfer of stock. In this case the fact is admitted that plaintiff's appointment as trustee was not communicated to the defendants, and it is not urged that his non-joinder affects the validity of the transfer. But it is alleged that the power of attorney from Mr. Lorenz, the trustee, who was in Europe, was a delegation of discretion, and therefore void. The authorities are clear that there can be no valid delegation of a discretion. Bulteel *v.* Abinger, 6 Jurist 412, is a leading case upon this subject. One of the trustees declined to take any part in the sale of the trust property, authorizing his co-trustee to sell the estate under their powers. A sale was effected by this co-trustee, accordingly, and on a bill for specific performance brought by the vendee, it was held: 1. That the fact of the trustees being also executors did not give each trustee, *qua trustee,* authority to deal exclusively with the property; and 2. That Lord Abinger could not lawfully delegate to his co-trustees an authority to sell the estate to his son, without reserving to himself a veto on the contract. In Hill on Trustees, *p. 474, it is held that a trustee is not justified in delegating the power of sale to a stranger, nor even to a co-trustee. In Hawley *v.* James, 5 Paige 487, the principle is thus stated: 'A trustee who has only a delegated discretionary power cannot give a general authority to

[Bohlen's Estate.]

another to execute the same, unless he is specially authorized so to do by the deed or will creating such power,' and in Pearson v. Jamison, 1 McLean's C. C. Rep. 197, ' Where an executor by the will is empowered to sell real estate in the best mode in his judgment for the interest of the estate he cannot delegate the power to another.' In Berger v. Duff, 4 Johns. Ch. R. R. 368, the case was this : ' The testator authorized his executors B. and C. to sell certain lots of land, if under the circumstances of the times they should deem it prudent ; and C. having gone abroad, sent a power of attorney to B., his co-executor, to sell the land on such terms as he should deem expedient ; *held,* that an agreement for the sale entered into by B. for himself and C. was not valid, and a bill filed for a specific performance of it, was accordingly dismissed. The Chancellor, in deciding the case, says : " The agreement to sell was not valid, being made by one executor without the personal assent and act of the other. The power was not capable of transmission or delegation from one executor to the other, and the rule of law and equity on this point is perfectly well settled." Citing Comb's Case, 9 Co. 75 ; Ingram v. Ingram, 2 Atkyns 88 ; Sir Thomas Clark in Alexander v. Alexander, 2 Ves. Sr. 643 ; Lord Hardwicke in Attorney-General v. Scott, 1 Ves. Sr. 417 ; Lord Redesdale in Hamilton v. Royse, 2 Sch. & Lef. 330 ; Hawkins v. Kemp, 3 East 410, and Sugden on Powers (2d ed.) 167. The defendants allege, however, that there was no delegation of discretion in the power of attorney ; that the acts to be performed by the attorney were merely ministerial. If the facts be so, the case would be free from difficulty. A trustee may delegate a mere ministerial duty, such as signing his name to a transfer of stock, or to a deed ; and if this were all this power of attorney authorized, the defendants would be right in their construction of it. But it was a general power to sell stocks, embracing everything in the estate, with authority ' to call in, sell or change any or all of the said stocks or loans, &c.,' with a power of substitution, and it was without any limit as to price, or reference to the time, place or manner of sale. Nor did the principal reserve any veto or check upon the act of his agent. The latter was to exercise all the discretion which was by law vested in the former. Whether the price was sufficient, or the sale itself, at the particular time, and in the then condition of the stock market was judicious, were questions which the agent was empowered to decide without any consultation with his principal. In this respect we think the power of attorney was invalid. If after making the sale the attorney had reported the same to his principal, and the latter had ratified it, *thus exercising his discretion,* I have no doubt the transfer under the power would have been good, and herein the defendants were remiss. With such a general power delegating discretion, they should have required some evidence of the

[Bohlen's Estate.]

ratification of the sale by the principal. Any assent, the production of a letter from him, would have been sufficient. But in the absence of any such ratification on his part, we are of opinion that the defendants had no right to allow this transfer, and that they are responsible for the loss of this stock.

"Nor do we think it helps the defendants that the trustee, Lorenz, has been absent in Europe for seven years. Such absence, although rendering him liable to removal, did not *per se* oust him from the trust. The fact that the defendants rely upon his power of attorney, as such trustee, for their protection, is a sufficient answer to this point.

"The decree in this case must be for the plaintiff."

The decree was :—

"This cause having been heard upon bill and answer, it is declared that the defendants, the Pennsylvania Company for the Insurances on Lives and Granting Annuities, are liable for the value of the shares of the capital stock belonging to the several trusts mentioned in the bill, and it is ordered that the said defendants do purchase fourteen shares of the said stock, and invest the same in the name of Charles Vezin, Ferdinand Lorenz and R. C. Mc-Murtrie, trustees under the will of Bohl Bohlen, for the estate devised in trust for J. Caroline M. Halbach and her children, and that they do purchase a like number of said shares, and invest the same in the name of R. C. McMurtrie, trustee under the said will for H. W. Halbach and her children, and that the said defendants do account and pay to the said trustee or trustees respectively the dividends declared and paid on the said number of shares on the 1st day of January 1871, and after that date together with interest from the 30th day of March 1872, deducting the sum of five hundred and eighteen dollars and fourteen cents from the amount thus found due to each of the said trusts, being the amount paid by the parties to whom the stock was pledged by the said Charles Vezin as security, and sold by them leaving that balance in their hands returned to the trustees."

The Pennsylvania Company appealed to the Supreme Court and assigned the decree for error.

*J. G. Johnson*, for appellants.—Trustees vested with the title to personalty during the lifetime of cestuis que trustent, under an active trust, are *ex necessitate* clothed with the duty of management, and, unless the instrument under which they hold directs otherwise, must, whenever in their opinion it is requisite to do so, change the investments, especially where they are not of the kind known as legal securities: Bowes *v.* Seeger, 8 W. & S. 222; Hill on Trustees 319 381; Perry on Trusts, sect. 465; Robinson *v.* Robinson, 1 De G., Mac. & G. 247; Pray's Appeals, 10 Casey 100; Hemphill's Appeal, 6 Harris 303; Worrell's Appeal, 11 Id. 44.

[Bohlen's Estate.]

Vezin's transfer of the stock under Lorenz's power was valid and of like force as if actually made by Lorenz in person.

We were *bound* to permit a transfer, under penalty, in case of an improper refusal, of a very severe forfeiture: Comm. Bank of Buffalo *v.* Kortright, 22 Wendell 348; German Union Society *v.* Sendmeyer, 14 Wright 67; Musgrave *v.* Bechendorff, 3 P. F. Smith 310.

If a trustee gives instructions to his attorneys or agents how to act, it cannot be said to be a delegation of the trust: Perry, § 409. We are entitled to the full benefit of the presumption, "*omnia rite esse acta:*" Broom's Legal Maxims 948; Ricard *v.* Williams, 7 Wheaton 59; Strother *v.* Lucas, 12 Peters 452; D'Arcy *v.* Tamar, 4 Hurl. & Colt. 463.

A power like the present, accompanying the legal title, may be delegated: Williams *v.* Peyton, 4 Wheaton 77; Lowring *v.* Marsh, 6 Wallace 337; Perry on Trusts, sects. 779, 789.

The present case is not one in which a discretionary power is conferred by reason of personal knowledge or confidence. If the power be given to the donee and *his assigns*, it will pass by assignment, if the power be annexed to an interest in the donee: 4 Kent's Commentaries 327; Titley *v.* Wolstenholme, 7 Beav. 436; Salloway *v.* Strawbridge, 7 De G., Mac. & Gord. 594; Perry on Trusts, sect. 340; 2 Washburne on Real Prop. 322.

Where trustees reside abroad, they may, *ex necessitate,* appoint attorneys to act in their absence in cases like the present: Rossiter *v.* Trafalgar Life Association, 27 Beavan 381; Stuart *v.* Norton, 14 Moore Priv. Coun. Cases 32; Vandever's Appeal, 8 W. & S. 405.

Where an estate is devised to executors in trust to sell, convey, &c., they may act by attorney; otherwise if the will gives nothing but a naked power: May's Heirs *v.* Frazee, 4 Littell 391; Colsten's Heirs *v.* Chaudet, 4 Bush 666; Blight *v.* Schenck, 10 Barr 285.

*G. Biddle* and *G. W. Biddle,* for appellee.—The defendants had notice of the trust—and are therefore liable for permitting a transfer by the trustees when the instrument creating the trust gave them no power to sell; as trustees they had no power to transfer: Lewin on Trusts 253; Phillippo *v.* Munning, 2 Myl. & Cr. 309; Byrchall *v.* Bradford, 6 Mad. 13, s. c., Id. 240; Hill on Trustees 238. The trustees had no *implied power* to sell: Bayard *v.* The Bank, 2 P. F. Smith 233; Duncan *v.* Jaudon, 15 Wallace 165; Harrison *v.* Harrison, 2 Atkyns 121; Goodwin *v.* Gossnell, 2 Coll. 457; Lowry *v.* Comm'l Bank, 1 Campb. R. 310; Shaw *v.* Spencer, 100 Mass. 389.

The power of attorney from Ferdinand Lorenz to Charles Lorenz and Charles Vezin, Jr., was void on its face, because it assumed

25 P. F. SMITH—21

to delegate discretionary powers, and the defendants are therefore liable for allowing a transfer to be made without other evidence of the consent of Lorenz, whose name appeared as a trustee. Where there are several trustees living all must join in the exercise of a discretionary power: Lewin on Trusts 298; Hill on Trustees 305; Crewe *v.* Dicken, 4 Ves. 98; Nicolson *v.* Wordsworth, 2 Swanst. 370; 3 Sugden's Vendors and Purchasers 173; Vandever's Appeal, 8 W. & S. 405; Sinclair *v.* Jackson, 8 Coms. (N. Y.) 544; Hood *v.* Law, 3 Blatch. C. C. R. 471; Chapin *v.* First Universalist Society, 8 Gray 583; Holcomb *v.* Holcomb, 3 Stockton (N. J.) 285.

The delegation by the one co-trustee to the other of discretionary power was void: Combe's Case, 9 Rep., 75 b, 1612.

NAKED POWER: Wilson *v.* Denison, 1 Ambler 86; Heger *v.* Deaves, 2 Johns. Ch. R. 154; Peabody *v.* Hoard, 46 Ill. 242; Berger *v.* Duff, 4 Johns. Ch. R. 369; Tainter *v.* Clark, 13 Metc. 226; Pearson *v.* Jamison, 1 McLean's C. C. R. 197; Madison *v.* Andrew, 1 Ves. 57; Witts *v.* Boddington, 3 Bro. Ch. Rep. 95; Sugden on Powers 175, 391–398; Hunt *v.* Douglass, 22 Vt. 130; Newton *v.* Bronson, 13 N. York 587; Piatt *v.* McCullough, 1 McLean's C. C. R. 78; Wilson *v.* Pennock, 3 Casey 239; Zebach *v.* Smith, 3 Binn. 69.

POWER COUPLED WITH AN INTEREST: Hawkins *v.* Kemp, 3 East 410; Sinclair *v.* Jackson, 8 Cowen 575; Hawley *v.* James, 5 Paige 487; Greenough *v.* Welles, 10 Cush. 571; Budd *v.* Hiler, 3 Dutcher 43; Belote *v.* White, 2 Head (Tenn.) 710; Hill on Trustees, sects. 472, 473, 483–489, 495; Cole *v.* Wade, 16 Ves. 28; Alexander *v.* Alexander, 2 Ves. Sr. 643; Coxe *v.* Day, 13 East 118; Down *v.* Worrall, 1 Myl. & Keene 561; Whittlesey *v.* Hughes, 39 Mo. 20; Saunders *v.* Weber, 39 California 290; Story on Agency, sect. 12. Where a power is coupled with an interest, the power cannot be delegated, except where the power is annexed to the beneficial interest or *property in the donee*. In other words, where a beneficial interest in property is placed in the hands of the person to whom it is given, then, of course, he can dispose of it, together with the estate to which it is a mere incident. All trustees, however, who have no beneficial interest, receive the property in a confidence and with a power to deal with it also; and as the power given to them is not annexed to the beneficial interest in the estate, but only to the legal title, the power cannot be delegated. * * * Granting of an estate, real or personal, to a man as trustee, and to his heirs, executors, administrators and assigns, does not confer any interest in, or pass the estate to his assigns in law: Cole *v.* Wade, 16 Ves. 46; Walter *v.* Maunde, 19 Id. 424. The power of sale of trust property, or a change of investment thereof, is always, *ex vi termini*, a discretion and confidence conferred upon trustees: Greenham *v.* Gibbeson, 10 Bing. 363; Bradford *v.* Bel-

[Bohlen's Estate.]

field, 2 Simons 264; Hitch v. Leworthy, 2 Hare 200; Townsend v. Wilson, 1 Barn. & Ald. 608; 2 Watson's Compendium of Equity 806.

The judgment of the Supreme Court was entered February 24th 1874.

PER CURIAM.—In affirming this decree, it is proper to state explicitly we do not decide whether any implied power arose under the will of Bohl Bohlen which would enable the trustees to sell the stocks held as investments. We, therefore, do not affirm that portion of the opinion of the learned judge in the court below relating to this question, but leave the point unembarrassed by any decision for discussion when it shall arise again.

We agree with the court below that the power of attorney from Ferdinand Lorenz to Charles Lorenz and Charles Vezin, was such a delegation of discretionary power as could not be legally made, and, consequently, that the sales of the stocks made under it were invalid. The part of the opinion relating to this question, and the authorities cited by the counsel, make it unnecessary for us to discuss this matter.

> Decree affirmed, with costs to be paid by the appellants, and appeal dismissed.