## Towne's Estate

642

644

. . . .

*Bevan A. Pennypacker* and *Francis B. Bracken,* for exceptant.

*Louis de Pui Vail,* contra.

SINKLER, J., February 7, 1936.—Exceptions to the trustee's account relate to the investment made by the Fidelity-Philadelphia Trust Company, one of the trustees, in part interests in five certain mortgages aggregating $20,000. The narration in the adjudication of the facts and pertinent phrases of the will is so complete that no repetition will be made here. The learned auditing judge found that the cotrustee, a lawyer and husband of the beneficiary, never approved these investments either before or after they were made. He discovered no power given by the will authorizing the trustees to act separately. Applying the general principle of law that investments must be made as a result of the exercise of joint discretion by the trustees, he ordered that the trust company substitute cash for these investments.

Upon careful consideration of the record and as well of the briefs filed both for and against the exceptions, we are of the opinion that under all the circumstances of the case the learned auditing judge erred in directing that the trust company be surcharged.

The auditing judge did not give due consideration to the fact that the conduct of the cotrustee and of the cestui que trust may amount to acquiescence or ratification; that failure on their part to reject the investments within a reasonable time constitutes such a course of conduct as will deprive them of the relief which they have asked.

In addition to the letter of August 7, 1924, there have been offered in evidence copies of quarterly statements which were rendered by the Fidelity-Philadelphia Trust Company to Mr. Vail and to Mrs. Vail. These statements exhibit items of credit for the investment of funds of the trust estate in the securities in question, and, as well, items of debit on account of income or interest received from the investments. Like statements were received for a period of not less than six and a half years before any action was taken by either Mr. Vail or Mrs. Vail. During all of this time Mrs. Vail received and enjoyed the income from the investments in question, and Mr. Vail received commissions as cotrustee upon the collection of income from the investments.

Mr. Vail has testified at length as to his failure to make any objection. He was absent at the time the letter of August 7, 1924, was received and cannot state positively whether or not he answered it. The trust company denies having received any response to the letter. On cross-examination he was asked whether he had received quarterly statements and whether he had read them, and he replied: "I did not go through them in any great detail. Q. You did not? A. No. I ought to, but did not." At the conclusion of this hearing he testified that his failure to give the necessary attention to the affairs of this estate was because he did not enjoy a large practice, and had to care for other estates. He never took any of the statements to an officer or employe of the trust company for explanation. He paid no attention to the accounts. The cotrustee was not only a lawyer but had in his charge other estates. He was

aware of the duties imposed upon him. His testimony just quoted is an admission of his failure to perform fully his duties as cotrustee.

In behalf of the company it was testified that all of the investments in question were regarded as desirable when they were made, and likewise that the trust company could have sold the objectionable investments during a period of time, not brief, after the investments had been made, had Mr. Vail within a reasonable time so requested. Brook Laughlin, an employe of the trust company, testified that Vail in about 1932 requested the company to have statements rendered showing the objectionable investments by name only, since he did not wish Mrs. Vail to be annoyed by knowing they were mortgages. Vail admitted this.

Mr. Vail in his testimony and in his brief of argument insists that he never consented to the investment in question, and argues that he could not delegate his discretion or judgment to his cotrustee. Having had notice of these investments when they were made, and four times a year thereafter through the receipt of the quarterly statements, his failure to make any objection must be taken as ratification and acquiescence on his part.

While a trustee may not delegate his duties to his cotrustee, the beneficiary of a trust may delegate to another the care and attention which the beneficiary should exercise in respect of the trust estate. In the present case Mr. Vail has testified that he never consulted with his wife about the income of the estate, that she would not understand an account. "She never wanted to discuss that in detail . . . She said: 'Don't go bothering me with a lot of details'." He having failed to take any action respecting the investments for a period of years, she is equally bound, as is he, by his failure to act.

The course of conduct followed by both Mr. Vail and his wife constituted acquiescence and ratification. The

investments made by the Fidelity-Philadelphia Trust Company without Mr. Vail's approval were not void, they were voidable, and unless he or the beneficiary undertook to disaffirm within a reasonable time they are precluded from now doing so. No less is the course of conduct pursued by them such as to preclude their receiving relief from this court. They permitted a long period of time to elapse during which the investments could have been removed from the account. They received the benefits of them, and then, when a partial default occurred, asked that the cotrustee assume the whole burden.

Under principles of equity too familiar to require quotation both the cotrustee and the beneficiary appear not entitled to the relief asked by them.

Our conclusions are in harmony with our decision in Maser's Estate, 21 D. & C. 559. The exceptant, the decedent's widow, and a trust company were named as cotrustees, she being also life tenant. An account was filed by the trust company alone. At the audit the widow complained of the retention of certain stock for a long period of years. The auditing judge found that periodically during the duration of the trust she had received, with the remittances of income, statements showing investments and income, and shared the commissions on income. This circumstance, coupled with the acceptance of the benefits without protest and assistance in the management of the trust estate, constituted ratification by her, as cotrustee, of the retention. Exceptions were dismissed in a brief per curiam opinion.

In Macfarlane's Estate, 317 Pa. 377, the Supreme Court of this State defined the duties resting upon a competent beneficiary by reason of knowledge obtained through the receipt of periodical statements as well as payments of income. The burden rested upon her, under the circumstances of that case, to show ignorance of the facts or inadequacy in the information supplied.

The exceptions raise the question whether the audit-

ing judge was correct in his finding that the trustee had an interest adverse to that of the trust estate in respect of the bonds issued under a mortgage secured upon premises at Sixteenth and Walnut Streets, Philadelphia, by reason of it being the corporate trustee of the mortgage securing the issue in question and the provision therein for an allowance not exceeding one percent for the services of the trustee in the event of foreclosure. He finds that this fact is a sufficient ground for a surcharge.

A majority of the court is of the opinion that the learned auditing judge erred in his finding. The interest of the trust company as corporate trustee is so negligible in character as not to constitute an inducement to purchase the bonds for the trust estate.

As we held in Curran's Estate, 17 D. & C. 435, 446, a trustee is not permitted to deal with trust property so as to gain any advantage beyond its lawful compensation. The trustee had purchased some bonds of an issue secured by a mortgage whereof the trustee was the corporate trustee. It appeared that the trust company was paid $1 for certifying each of the $1,000 bonds. The compensation for certifying each of the three bonds belonging to the estate was $3. This we held was an interest of so trifling a nature as not to justify a surcharge. A word of caution was uttered by Henderson, J., to wit, that it might be a wise practice for a trust company to refrain from purchasing for its trust estate any bonds of an issue wherein the trustee is acting as a corporate trustee under the deed securing the same.

Williams' Estate, 19 D. & C. 225, affords an illustration of the character of transactions which justify a surcharge. The guardian of a minor's estate, a trust company, owned certain mortgages which were in default. The company transferred these mortgages to the estate of one of its wards and was surcharged with the amount thereof.

Another illustration of a transaction which has met with our disfavor is the purchase by the trustee of a volume of bonds at the wholesale price, and the distribution thereof among the trust estates at the retail price, thus realizing an immediate and substantial profit. In those cases there existed dealings by the trustee as an individual with the trust estate.

In the case before us the trust company was not dealing with a trust estate whereof it was trustee but with a group of bondholders not in existence when the transaction took place, that is, the execution of the mortgage or deed of trust, whereof the trust company was the corporate trustee, containing a covenant whereby the trustee was to receive not a profit but an allowance for services upon the occurrence of an event which might happen, to wit, the foreclosure of the mortgage. This circumstance is of so negligible a character as not to create an interest adverse to the cestui que trust. An immediate and substantial profit to a trustee may affect his judgment in the management of his trust estate. A remote contingency of an allowance for services does not constitute a factor such as will influence the exercise of his discretion.

The findings of the auditing judge which are the subject of the first and second exceptions are correct in themselves. They become ineffective because in our opinion the conduct of the cotrustee and beneficiary precludes their availing of the fact that the investments were made upon the judgment of the trust company alone. With this qualification the first and second exceptions will be formally dismissed.

The fourth exception is based upon the relevancy of the finding which is the subject of the exceptions. Since the finding is itself correct, and by reason of our sustaining the fifth exception, the fourth exception is formally dismissed.

The first sentence in the part of the adjudication which is the subject of the fifth exception is a sound

postulate of law. The second sentence is based upon an assumption of facts with which we do not agree, to wit, that the interest of the trust company as corporate trustee under the mortgage in question was of a sufficiently substantial nature to justify a surcharge. The exception will therefore be sustained.

The subject of the sixth exception is the order of the auditing judge that the credit for the costs of foreclosure be stricken from the account. The auditing judge held that the investment in the mortgage in question was unauthorized. We reverse his finding upon this point, and the costs of foreclosure are therefore a proper credit in the account. Therefore this exception will be sustained.

The seventh exception is sustained as to the following: "except that the accountant shall substitute cash for the securities hereinbefore mentioned, and is surcharged with costs of foreclosure, $40.89."

The first, second, and fourth exceptions are dismissed. All other exceptions are sustained.

The adjudication will be amended as herein set out, and as amended is confirmed absolutely.

### Sur Exceptions to Decree

An exception has been filed by the beneficiary and the cotrustee, Mr. Vail, to the decree of the auditing judge dated July 2, 1935, whereby it is decreed that the trustees of the estate of Nathan P. Towne, deceased, pay unto Ashton Locke Worrall, Esq., the sum of $350 as counsel fee for professional services performed by him for the benefit of the estate, this order to be made a part of the adjudication of June 22, 1935.

The adjudication contains the following: "It was suggested that an allowance be made for counsel fees. Counsel are directed to submit to the auditing judge the amounts which they suggest should be allowed."

Mr. Bracken, representing the accountant, stated that no credit was taken by the company for counsel fee. He

proceeds: "The accountant and I are inclined to leave that matter entirely to the court for such allowance as may be thought proper in a case of this kind, after your Honor has considered it."

The statement of Mr. Worrall as to counsel fees is as follows:

"If your Honor please, I have one request to make in this case, and that is respecting counsel fees. I feel in this case, as this matter is largely a controversy between cotrustees, that any counsel fees that are to come out of the estate should be modest and equally divided between counsel for the trustees. I would suggest that the counsel fees, subject to the approval of the court, if Mr. Bracken has no objection, be taken out of principal account."

From these statements it is apparent that both Mr. Bracken and Mr. Worrall contemplated the award of the usual fee to counsel for the accountant, to be paid out of principal and divided between them.

There are two trustees, the Fidelity-Philadelphia Trust Company and Louis de Pui Vail. The account was stated and filed by the trust company alone, and was filed in order that Mr. Vail and his wife, who is the sole beneficiary, might have an opportunity at the audit to object to certain investments. At the audit Mr. Bracken appeared for the accountant and Mr. Worrall appeared for Mrs. Vail, the cestui que trust, and for Mr. Vail, the cotrustee. Our opinion filed this day sustains exceptions to the adjudication of the learned auditing judge. The effect of our opinion is to set aside a surcharge of the trust company by reason of the making of the investments in question.

Briefs for and against the exception to the allowance of the counsel fee to Mr. Worrall have been filed. The brief in support of the fee contains a counter-statement of the question involved, as follows:

"Power of the auditing judge to award a fee to counsel for a cotrustee, payable by the estate, where counsel's

services have protected or raised a common fund for administration and inured to the benefit of the estate."

The argument contains nothing in elaboration of this feature of the case, that is, that the compensation was for having protected or having raised a common fund for administration. The brief filed in support of the exception and against the allowance of the fee recites that the decree was obtained without notice to Mr. Vail or his wife, and contains many other matters not of record and therefore not to be considered by us. .

The exception to the decree is sustained. From the adjudication and the record above quoted it is apparent that the counsel fee in question was that of the attorney who appeared for the sole accountant, that is, Mr. Bracken. According to Mr. Worrall's theory of the case, he was to be compensated for the protection of the estate or the raising of a fund for distribution. Upon this theory, the exceptions to the adjudication having been sustained, his services did not result in raising a fund, for the surcharges are dismissed.

On other grounds likewise the exception to the decree should be sustained. Services rendered to the beneficiary must be compensated by her. In Harrison's Estate, 221 Pa. 508, the Supreme Court held, sustaining a decision of this court, that only in very exceptional cases an exceptant to the account of an executor, administrator or trustee will be allowed counsel fees out of the fund. The rule in such cases is that the exceptant must pay his own counsel fee.

So far as the services rendered to Mr. Vail are concerned, this was not in connection with the administration of the estate but only in an effort to secure a surcharge of the Fidelity-Philadelphia Trust Company, Mr. Vail's cotrustee. We know of no precedent for making an allowance to a trustee out of the principal of an estate for services rendered to the trustee who refused to join in the account, under such circumstances as exist in the present case.

The exception therefore should be sustained for three reasons: (1) The decree was not made pursuant to the adjudication and record; (2) the advantage to the estate which was accomplished through the adjudication no longer exists, because of the sustaining of the exceptions to the adjudication, and (3) the services were rendered to Mr. Vail as cotrustee, and to the cestui que trust, and should be compensated by them and not by the estate.

The exception is sustained, the adjudication will be amended as herein set out, and as amended is confirmed absolutely.

NILES, P. J., nineteenth judicial district, specially presiding, dissenting.—Not without diffidence do I note my dissent.

I do so only because after reconsideration of the adjudication I am not convinced that the law when applied to the admitted facts is or ought to be such as should sustain the exceptions.

The trust company and Mr. Vail were joint trustees of the fund provided by the will of Nathan P. Towne. Mrs. Vail, his daughter, is given the net income for life. At her death the trust estate goes to residuaries.

The obligations of the trustees were to the estate, are fixed, and may not be waived or changed by agreement or acquiescence. In matters of discretion cotrustees may not act separately. The trust fund is entitled to the discretion of both. This is the reasonable rule recognized in all of the authorities, and in the arguments for exceptants.

It is urged however that one trustee may ratify the separate action of the other with the same effect as if he had originally acted in the making of the investment; and that such ratification may be established by silence, or failure to object after notice, or by accepting part of the trustee's commission.

While it may be that under some circumstances this might be just, the undisputed facts in this case exclude such qualification. We are concerned not only with the

culpable breach of duty by trustee Vail but the inattention of Mrs. Vail, who is entitled to the income for life. The whole Towne trust for protection of all of its beneficiaries ought to be administered in accordance with law.

The facts illustrate the value of the rule. All of the investments, except those the subject of dispute, were made upon the written authority of Mr. Vail. Both trustees joined in the exercise of the discretion. Only on the $20,000 invested by the trust company, without the knowledge or assistance of Mr. Vail, the other trustee, is a loss imminent.

It was incumbent upon both trustees to have adequate knowledge, and thereon exercise their joint judgment. If this wise and settled rule had been observed the losses occuring in the investments made by the trustees alone might have been avoided. In these inferior investments the trust company varied from the rule and its own practice. The others, which were made by both trustees jointly, show no loss.

What may have been the reasons for the omission is unimportant. The evidence is that a letter of August 7, 1924, notifying Mr. Vail that the trust company had made these investments was without details as to the security, was erroneous in an important statement regarding one security, and gave no intimation that the trust company had an interest in another as trustee in the mortgage.

If carelessly, or for reasons undesirable to disclose, the trust company disregarded the rule clearly expressed in Bohlen's Estate, 75 Pa. 304, it took the risk, and the loss resulting should not be borne by the beneficiaries of the Towne estate.

The proposition that the failure of Mr. Vail to perform the duties incumbent on him can inflict the loss on Mrs. Vail, the life beneficiary, and on those ultimately entitled to the corpus, does not seem just.

His conduct indeed was not admirable. Yet if he failed to exercise the care, discretion and judgment due from

him as one of the trustees and allowed the other trustee to make the investments without his aid, if he failed to use due diligence to ascertain the relevant facts after he had some partial notice of what the other trustee had done alone, and if without doing any service he accepted part of the commissions from the trust company, he was remiss in his duty and may be held to account. This may be conceded, but it misses the real point.

That both trustees have been delinquent should not cause the loss to be borne by the trust estate and its innocent present and final beneficiaries.

The contention of exceptants is contrary to the principles recognized in the Restatement of the Law of Trusts. Section 194, page 516, states:

"If there are two or more trustees, the powers conferred upon them can properly be exercised only by all the trustees, unless it is otherwise provided by the terms of the trust."

The comments on this section accord with the principles of the adjudication, and are inconsistent with the exceptions.

The trustee Vail was under a duty to the beneficiaries not to delegate to his cotrustee the sole management of any part of the trust estate. The trust company also was under a duty not to accept such delegation. Neither could ratify their unauthorized acts to the disadvantage of the trust estate: see Restatement of the Law of Trusts, section 171, page 441, section 184, page 468.

The sophistry of the claim that what one trustee did or omitted after the other had made the improvident investment can ratify it, in such a way as to put the loss upon the cestui que trust, is clear. No one can ratify that which he has no legal right to do originally. If Mr. Vail had agreed in writing that the $20,000 of the Towne trust should be invested in such securities as the trust company alone selected, and that he would ask no question nor interfere in any way with the sole discretion of the trust company, and that in consideration of his com-

placency he should receive half of the trustee's compensation, both he and the company would have violated their legal duty. The loss on improvident investments so made should not be borne by the trust estate. Neither should such inequitable result follow as so-called ratification by any such conduct as is shown here.

The argument made on behalf of the intervening fiduciaries regards a phase only incidental to the adjudication.

Without previous knowledge or authority of its cotrustee, $5,000 was invested by the trust company in bonds secured by a mortgage for $250,000 in which the trust company was trustee, with the usual provisions for its compensation. The erroneous statement subsequently was made by the trust company to Mr. Vail that this mortgage was for $200,000. These facts, in connection with the other considerations mentioned, are persuasive for the application of the rule regarding the requirement that cotrustees must exercise the joint discretion and judgment contemplated by the founder of the trust.

Without regard to the other elements in this case, however, the principle that a trustee should have no interest in a security in which it invests the funds of the trust estate, and especially should not be in a position to obtain a benefit ahead of the cestui que trust, is a wholesome one and should not be discarded.

The intervener's brief gives an interesting review of the developing trust company business. The capital needed for useful business enterprises, to an increasing extent, has been obtained largely by the sale of bonds, secured by mortgages to a trustee for all bondholders. These mortgages have contained progressively elaborate provisions limiting the liabilities and increasing the emoluments and protection of the corporate trustee. In one of the latest quoted by counsel the reasonable compensation for the services of the trustees and reimbursement for all payments and liabilities incurred are made a lien on all of the mortgaged property, prior to that of

the bonds. It is quite conceivable that the enterprise, of which such corporate mortgage is a part, may be the result of the financial plans of the promoters, security salesmen and their lawyers, connected in various degrees with a trust company having in its control large amounts of trust funds for investment. A corporation with money for investments in its hands as a testamentary trustee accountable to the court may not be able under such circumstances to exercise such impartial and disinterested discretion and judgment as should be expected of a trustee.

To sustain these exceptions would tend to weaken the principle, in the present times as wise and necessary as ever, expressed by this court in Curran's Estate, 17 D. & C. 435, 446: "A trustee is not permitted to deal with trust property so as to gain any advantage beyond its lawful compensation".

This court further said: "It might be a wise practice for a trust company to refuse to purchase for its trust estates any bonds wherein it is acting as trustee under the deed securing the same." The present case presents a condition in which that dictum should be adopted as the law.

With due deference to the opposite judgment of my learned brethren I would dismiss the exceptions.